# 21-1819

## United States Court of Appeals
## for the Second Circuit

LAVVAN, INC.,
*Plaintiff-Appellee,*

v.

AMYRIS, INC.,
*Defendant-Appellant.*

On Appeal from the U.S. District Court for the
Southern District of New York (No. 1:20-cv-7386-JPO)

**BRIEF OF PLAINTIFF-APPELLEE LAVVAN, INC.**

Jason Cyrulnik
Paul Fattaruso
CYRULNIK FATTARUSO LLP
55 Broadway, Third Floor
New York, NY 10006
646 844 2466
jcyrulnik@cf-llp.com
pfattaruso@cf-llp.com

*Counsel for Plaintiff-Appellee Lavvan, Inc.*

# CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellee, Lavvan, Inc., states that it is a non-governmental corporation and has no parent corporation. Lavvan is not publicly traded, and no publicly held corporation owns more than 10% of Lavvan's stock.

Dated: December 15, 2021

　　　　　　　　　 /s/ Jason Cyrulnik
　　　　　　　　　Jason Cyrulnik

# TABLE OF CONTENTS

Introduction................................................................................1

Jurisdictional Statement............................................................3

Issues Presented........................................................................3

Counter-Statement of the Case..................................................4

    A.    The parties' agreement grants Lavvan an exclusive
license to IP that Amyris has infringed.................................4

    B.    The RCL Agreement provides that some disputes
will be arbitrated, while others—specifically, IP
disputes—"will not be submitted to arbitration" ..................6

    C.    The district court denies Amyris's motion to compel
arbitration or dismiss Lavvan's claims ................................8

Summary of Argument..............................................................11

Standard of Review ..................................................................13

Argument..................................................................................13

    I.    The parties did not clearly and unmistakably delegate to
an arbitrator the question of arbitrability of Lavvan's IP
claims....................................................................................13

    A.    The "clear and unmistakable evidence" is that the
parties agreed *not* to delegate the question of
arbitrability of IP disputes....................................................14

    B.    The RCL Agreement does not incorporate the
ICC rules with respect to Lavvan's IP claims ......................16

    C.    Because the parties did not delegate to an arbitrator
the question of arbitrability of IP disputes, the
Supreme Court's decision in *Henry Schein* does not
apply .....................................................................................21

    II.    Under Section 7.2.1 of the RCL Agreement, Lavvan's
IP claims must be heard in court, not arbitration.....................24

    A.    Section 7.2.1 unambiguously provides that Lavvan's
IP claims "will not be submitted to arbitration" ..................25

    B.    Lavvan asserts IP claims that fall squarely within

Section 7.2.1's prohibition against arbitration ..................... 27

C.   Section 7.2.1 resoundingly defeats any presumption
of arbitrability of Lavvan's IP claims ................................... 34

Conclusion ............................................................................... 34

# TABLE OF AUTHORITIES

## Cases

*Acevedo Maldonado v. PPG Indus., Inc.*,
514 F.2d 614 (1st Cir. 1975) ............................................................... 32

*Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*,
445 F.3d 121 (2d Cir. 2006) ................................................................. 20

*Am. Bankers Ins. Grp., Inc. v. Long*,
453 F.3d 623 (4th Cir. 2006) ............................................................... 32

*Archer & White v. Henry Schein*,
935 F.3d 274 (5th Cir. 2019) ............................................................... 22

*Bossé v. N.Y. Life Ins. Co.*,
992 F.3d 20 (1st Cir. 2021) ................................................................. 23

*CardioNet, Inc. v. Cigna Health Corp.*,
751 F.3d 165 (3d Cir. 2014) ............................................................... 32

*Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc.*,
567 F.3d 1191 (10th Cir. 2009) .......................................................... 32

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995) .................................................... 29, 30, 31, 32

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
6 F.4th 308 (2d Cir. 2021) .......................................................... passim

*First Options of Chicago v. Kaplan*,
514 U.S. 938 (1995) .................................................................. 13, 20, 22

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010) ............................................................................ 25

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (U.S. 2019) ...................................................... 21, 22, 23

*In re Am. Express Fin. Advisors Secs. Litig.*,
672 F.3d 113 (2d Cir. 2011) ............................................................... 26

iv

*Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH,*
   141 F.3d 1434 (11th Cir. 1998) ............................................................ 33

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,*
   174 F.3d 907 (7th Cir. 1999) ................................................................ 32

*Lloyd v. J.P. Morgan Chase & Co.,*
   791 F.3d 265 (2d Cir. 2015) .............................................. 26, 31, 33, 34

*Metro. Life Ins. Co. v. Bucsek,*
   919 F.3d 184 (2d Cir. 2019) ..................................................... 12, 21, 23

*NASDAQ OMX Grp. v. UBS Secs.,*
   770 F.3d 1010 (2d Cir. 2014) ...................................................... passim

*R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n,*
   384 F.3d 157 (4th Cir. 2004) ............................................................... 32

*Shaw Grp. Inc. v. Triplefine Int'l Corp.,*
   322 F.3d 115 (2d Cir. 2003) ................................................................. 9

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
   559 U.S. 662 (2010) ..................................................................... 25, 33

## Statutes

18 U.S.C. § 1836 ........................................................................... 2, 4, 8

28 U.S.C. §§ 1331 ................................................................................ 3

28 U.S.C. §§ 1338 ................................................................................ 3

35 U.S.C. § 271(a) ......................................................................... 2, 4, 8

9 U.S.C. § 16(a)(1)(B) ......................................................................... 3

## Rules

Rule 12(b)(6) ..................................................................................... 8

## INTRODUCTION

The district court correctly denied Amyris's motion to compel arbitration of Lavvan's intellectual property claims. The parties' governing agreement expressly provides that IP disputes "*will not* be submitted to arbitration" and that the parties must bring IP suits "*solely* in a court or other tribunal of competent jurisdiction." A319, Section 7.2.1 (emphasis added). The district court thus recognized that under "the clear dictates" of the contract, "the parties must litigate, not arbitrate, intellectual property disputes." A193.

In its long and winding appeal brief, Amyris tries to undo the district court's sound application of the contract's terms by improperly seeking to apply an arbitration clause that governs only *non-IP* claims and thus does not apply to the claims in this case. Amyris's arguments are unavailing.

*First*, the contract does not require that the question of arbitrability of these claims be decided by an arbitrator. To do so, the contract must provide "clear and unmistakable" evidence the parties intended to delegate to an arbitrator the question of arbitrability of these claims. Amyris Br. at 18. Here, the district court recognized that

the contract provides clear and unmistakable evidence "in the other direction"—that is, the question of arbitrability of these claims clearly is *not* delegated to an arbitrator. A192. Rather, IP disputes expressly "will not be submitted to arbitration." A319. This Court has repeatedly held that where, as here, the agreement expressly excludes specified issues or claims from arbitration, arbitration rules concerning questions of arbitrability do not apply until "a decision is made as to whether a question does or does not fall within the intended scope of arbitration." *NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010, 1032 (2d Cir. 2014); *see also DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 322 (2d Cir. 2021). Amyris tries but fails to twist the *DDK Hotels* case to its favor: In *DDK Hotels*, this Court held that the question of arbitrability was for the *court*, not an arbitrator. The contract terms here compel the same outcome.

*Second*, Lavvan's IP lawsuit is squarely within the scope of the contractual provision requiring IP disputes to be resolved in court, precluding arbitration of this dispute. This lawsuit involves two claims: trade secret misappropriation under the Defend Trade Secrets Act (18 U.S.C. § 1836) and patent infringement under 35 U.S.C. § 271(a).

2

These claims, which both survived Amyris's motion to dismiss, are squarely disputes "with respect to the scope, ownership, validity, enforceability, revocation or infringement of any Intellectual Property," and thus "will not be submitted to arbitration" and must be initiated "solely in a court or other tribunal of competent jurisdiction" under Section 7.2.1. A319.

The district court's order denying Amyris's motion to compel arbitration should be affirmed.

## JURISDICTIONAL STATEMENT

Lavvan concurs with Amyris's statement that the district court had jurisdiction under 28 U.S.C. §§ 1331 and 1338 and that this Court has jurisdiction under 9 U.S.C. § 16(a)(1)(B).

## ISSUES PRESENTED

1.    The question of whether a dispute is arbitrable should be decided by the court, not an arbitrator, unless there is "clear and unmistakable evidence" that the parties agreed to delegate that question to an arbitrator. Here, the parties' agreement contains no such "clear and unmistakable evidence"—just the opposite: the agreement expressly provides not only that IP disputes "will not be submitted to arbitration," but also that the parties may initiate such disputes "solely

3

in a court or other tribunal of competent jurisdiction." Was the district court correct that the parties' agreement does not contain the required "clear and unmistakable evidence" of intent to delegate the question of the arbitrability of Lavvan's IP claims to an arbitrator?

2.     The parties' agreement expressly provides that IP disputes— that is, disputes "with respect to the scope, ownership, validity, enforceability, revocation or infringement of any Intellectual Property"—"will not be submitted to arbitration." Lavvan asserts two claims in this lawsuit: trade secret misappropriation under the Defend Trade Secrets Act (18 U.S.C. § 1836) and patent infringement under 35 U.S.C. § 271(a). Did the district court correctly deny Amyris's motion to compel arbitration of Lavvan's IP claims?

## COUNTER-STATEMENT OF THE CASE

Amyris's appeal seeks to overturn the district court's well-founded rulings that (i) the question of arbitrability was for the court to decide, and (ii) Lavvan's IP claims are not arbitrable.

### A.     The parties' agreement grants Lavvan an exclusive license to IP that Amyris has infringed

This case concerns Amyris's violation of Lavvan's intellectual property rights after the parties' business relationship went awry.

4

Lavvan is a biosynthetic cannabinoid technology, ingredient, and product company. A212, A233. In 2018, Lavvan initiated a collaboration with Amyris, a biosynthetics company specializing in industrial fermentation that owned hundreds of patents relating to those processes. A217-20. In March 2019, the parties documented this collaboration in their Research, Collaboration and License Agreement ("RCL Agreement" or "RCLA"). Under the RCL Agreement, Amyris agreed to conduct research and development to create bacterial strains to produce biosynthetic cannabinoids, and Lavvan would commercialize those cannabinoids, paying Amyris milestone payments and part of the resulting profits in exchange for Amyris's R&D. A222.

This relationship was fundamentally predicated on exclusivity: Lavvan paid millions of dollars to obtain an exclusive license—exclusive "even as to Amyris"—to use the cannabinoid-relevant IP. A224-25 (quoting RCLA § 5.6). Indeed, the exclusivity is highlighted by the structure of a new special-purpose entity (SPE) created to house the IP: the IP went first to the SPE before being licensed to Lavvan (and, for limited, specific items contemplated in the RCL Agreement and not

5

applicable here, back to Amyris). *Id.* Such IP includes patents and trade secrets. *Id.*; *see also* A295 (RCLA § 1.68).

Dissatisfied with the terms of the agreement it struck after receiving Lavvan's much-needed initial payment under the RCL Agreement, Amyris began to repeatedly demand that Lavvan change the terms of its agreement, and when Lavvan declined, Amyris took matters into its own hands, flouted the contract and proceeded to violate Lavvan's exclusive rights to the IP covered by the parties' agreement in an effort to pursue the contemplated joint venture for itself. Rather than honoring the parties' partnership, Amyris has announced that it is producing its own biosynthetic cannabinoids without Lavvan and despite Lavvan's demands to cease, all in direct violation of Lavvan's IP rights. A269-74.

**B. The RCL Agreement provides that some disputes will be arbitrated, while others—specifically, IP disputes— "will not be submitted to arbitration"**

Section 7 of the RCL Agreement, titled "Dispute Resolution," contains two subsections: Section 7.1 (Arbitration) and Section 7.2 (Intellectual Property Disputes). Section 7.1 provides that to the extent the parties' management cannot resolve disputes, those disputes

6

generally will be resolved through arbitration—with the express
exception under Section 7.2 that disputes regarding Intellectual
Property "will not be submitted to arbitration" unless the parties agree
otherwise in writing. A318-19.

Amyris's misconduct gave rise to multiple claims, some of which
fall within the arbitration clause of Section 7.1, and some of which are
IP disputes that fall within the "no arbitration" clause of Section 7.2.

On August 22, 2020, Lavvan filed a request for arbitration of its
*non-IP* claims against Amyris, for breach of contract, breach of the
covenant of good faith and fair dealing, unjust enrichment, unfair
competition, promissory fraud, and breach of fiduciary duty. A374-455.
Lavvan's request for arbitration stated that Lavvan would be asserting
its IP claims in federal court as required by the RCL Agreement. A386.

On September 10, 2020, Lavvan filed its complaint in this case,
asserting claims for misappropriation of trade secrets and patent
infringement. Lavvan's complaint sets out in detail the IP rights
Lavvan obtained under the RCL Agreement and the parties'
negotiations over those IP rights. A224-28. The complaint describes the
deterioration of the parties' collaboration and sets out the details of

7

Amyris's infringement of Lavvan's IP rights. A272-74. The complaint asserts two claims: trade secret misappropriation under the Defend Trade Secrets Act (18 U.S.C. § 1836) and patent infringement under 35 U.S.C. § 271(a). A276-86. In its prayer for relief, Lavvan seeks, among other things, a judgment that Amyris misappropriated Lavvan's trade secrets, a judgment that Amyris infringed Lavvan's patents, treble damages under the Defend Trade Secrets Act, damages for misappropriation of trade secrets, exemplary damages under the Defend Trade Secrets Act, and enhanced damages for willful patent infringement. A287.

## C. The district court denies Amyris's motion to compel arbitration or dismiss Lavvan's claims

On October 2, 2020, Amyris moved to compel arbitration of Lavvan's IP-related claims or, in the alternative, to dismiss them under Rule 12(b)(6). A98. Amyris first argued that the district court should delegate the question of arbitrability to an arbitrator. A356-58. Amyris's only basis in the RCL Agreement for this argument was Section 7.1.1's reference to the ICC Rules. *Id.* Amyris next argued that, should the district court decide the question of arbitrability, it should conclude that Lavvan's claims are arbitrable because Lavvan's claims for

misappropriation of trade secrets and patent infringement are (somehow) not actually IP claims. *See* A358-61.

Lavvan opposed Amyris's motion. *See* A561-88. On the question of who decides arbitrability, Lavvan explained that the presumption is in favor of the court unless there is "clear and unmistakable evidence" that the parties intended to delegate the question to an arbitrator. A572-73 (quoting *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003)). Here, the evidence is "clear and unmistakable" that the parties intended that IP-related disputes would "not be submitted to arbitration" and instead would be initiated "solely in a court or other tribunal of competent jurisdiction." A573 (quoting RCLA § 7.2.1). The reference to arbitration rules in a separate, inapplicable portion of the dispute resolution provisions was not sufficient to overcome the parties' clear agreement that IP-related disputes were not to be submitted to arbitration and had to be litigated in court. *Id*. On the question of arbitrability itself, Lavvan explained that the RCL Agreement was perfectly clear that these disputes were not arbitrable and that Amyris's argument to the contrary failed to engage with the terms of the parties' agreement. A570-72.

The district court denied Amyris's motion to compel. It ruled that the RCL Agreement, far from providing "clear and unmistakable" evidence of intent to delegate the question of arbitrability, provided clear and unmistakable evidence "in the other direction: The RCLA explicitly carves out intellectual property disputes from arbitration." A192.

In addressing the arbitrability question itself, the district court acknowledged that its analysis was controlled by the substantive allegations of the pleadings and held that those substantive allegations set forth IP claims that are not arbitrable under the RCL Agreement: "Intellectual property and contractual issues are regularly intertwined; the mere fact that an intellectual property claim may involve contractual analysis is insufficient to strip the 'intellectual property' label for purposes of this motion." A193.

Finally, the district court denied Amyris's motion to dismiss Lavvan's IP claims, holding instead that Lavvan had adequately alleged facts supporting those claims. A197-98.

Amyris now brings this interlocutory appeal of the district court's denial of Amyris's motion to compel arbitration.

## SUMMARY OF ARGUMENT

Under the plain terms of the RCL Agreement and Second Circuit law, the district court correctly denied Amyris's motion to compel arbitration.

*First*, the district court was correct not to delegate to an arbitrator the question of arbitrability of Lavvan's IP claims. The question of arbitrability may not be referred to an arbitrator unless there is "clear and unmistakable evidence" that the parties intended to delegate that question. *See DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021). The district court correctly ruled that the "clear and unmistakable" evidence in the RCL Agreement points the *other* direction: Section 7.2.1 specifically provides that IP disputes "will not be submitted to arbitration," and a party "may initiate litigation solely in a court or other tribunal of competent jurisdiction." A192.

Amyris's misguided argument that the contract's reference to arbitration rules—in a separate, inapplicable section of the agreement—can somehow constitute the required "clear and unmistakable" intent to delegate arbitrability runs contrary to well-established Second Circuit law. *See DDK Hotels*, 6 F.4th at 320; *Metro.*

11

*Life Ins. Co. v. Bucsek*, 919 F.3d 184, 195 (2d Cir. 2019); *NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010, 1032 (2d Cir. 2014). A contract's reference to arbitration rules does not delegate the question of arbitrability to an arbitrator with respect to claims that are even arguably exempted from the provision incorporating the rules. *See DDK Hotels*, 6 F.4th at 320; *NASDAQ OMX*, 770 F.3d at 1032. The IP claims at issue here are directly and expressly covered by Section 7.2.1, not Section 7.1.1 on which Amyris wrongly relies. Amyris thus does not remotely satisfy its burden of showing "clear and unmistakable" evidence that the parties intended to delegate to an arbitrator the question of arbitrability of IP claims.

*Second*, the district court correctly denied Amyris's motion to compel arbitration. Whether a claim is arbitrable turns on whether the parties agreed to arbitrate it, and the RCL Agreement states that IP disputes "will not be submitted to arbitration." A319 (RCLA § 7.2.1). Amyris attempts to avoid this crystal-clear contractual language by arguing that Lavvan's claims for patent infringement and trade secret misappropriation somehow are not actually IP claims. That theory fails. The district court examined the substance of Lavvan's claims and held

12

that Lavvan's claims are squarely within the scope of Section 7.2.1, which encompasses any dispute "with respect to the scope, ownership, validity, enforceability, revocation or infringement of any Intellectual Property." A319. That decision was correct and should be affirmed.

## STANDARD OF REVIEW

The standard of review for denial of a motion to compel arbitration, as well as the issue of whether arbitrability is for the court or the arbitrator, is *de novo*. *DDK Hotels*, 6 F.4th at 316.

## ARGUMENT

## I. The parties did not clearly and unmistakably delegate to an arbitrator the question of arbitrability of Lavvan's IP claims

The district court correctly ruled that it was for the court, not an arbitrator, to decide whether Lavvan's IP claims are arbitrable. A192. By law, the question of arbitrability is for the court to decide *unless* the parties *clearly and unmistakably* evince their intent to delegate that question to an arbitrator. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 947 (1995) (arbitrability was question for court where parties did not clearly agree that arbitrability would be decided by arbitrator).

Here, the parties did not agree to delegate that question, let alone clearly and unmistakably so. To the contrary, the parties' agreement

expressly *mandates* that IP disputes are to be decided by a *court*, not an

arbitrator. Amyris identifies no clear and unmistakable evidence that

overcomes the clear contractual terms of Section 7.2.1 stating that

IP disputes "will not be submitted to arbitration."

### A. The "clear and unmistakable evidence" is that the parties agreed *not* to delegate the question of arbitrability of IP disputes

Amyris's attempt to refer the question of arbitrability to an

arbitrator flies in the face of the clear terms of the RCL Agreement.

Threshold questions of arbitrability "presumptively should be resolved

by the court and not referred to the arbitrator." *DDK Hotels, LLC v.*

*Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021). "Courts should

not assume that the parties agreed to arbitrate arbitrability unless

there is 'clear and unmistakable' evidence that they did so." *Id.*

(brackets omitted).

The court applies ordinary principles of state contract law (here,

New York law), and the party seeking to compel arbitration bears the

burden of establishing the "clear and unmistakable" evidence of the

parties' intent to delegate the question of arbitrability to an arbitrator.

14

*See id.* (citing *NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010, 1032 (2d Cir. 2014)).

Here, the "clear and unmistakable evidence" in Section 7.2.1 of the RCL Agreement shows that the question of arbitrability may *not* be submitted to the arbitrator: IP disputes "will not be submitted to arbitration." A319. Rather, for IP disputes, the parties "may initiate litigation solely in a court or other tribunal of competent jurisdiction." *Id.* Submitting such a dispute first to an arbitrator to decide arbitrability would run directly contrary to these plain terms.

The prohibition of Section 7.2.1 against submitting IP disputes to arbitration is broad: it does not contain any carve-out for the question of arbitrability to be submitted to an arbitrator. Rather, IP disputes "will not be submitted to arbitration," without qualification. A319. Bringing the dispute to an arbitrator to decide arbitrability would be "submitting" it to arbitration, in contravention of Section 7.2.1.

Thus, even without the strong default legal presumption that courts should decide the question of arbitrability, the RCL Agreement affirmatively establishes on its own terms that IP disputes "will not be submitted to arbitration" on *any* question. Given the strong default

15

legal presumption, Amyris's attempt to compel arbitration on the question of arbitrability would fail even if the RCL Agreement were ambiguous or anything less than clear and unmistakable that the parties intended to delegate the question of arbitrability of IP disputes. *See DDK Hotels*, 6 F.4th at 317. Section 7.2.1 resoundingly defeats Amyris's position.

### B.    The RCL Agreement does not incorporate the ICC rules with respect to Lavvan's IP claims

Amyris misguidedly relies on an inapplicable provision, Section 7.1.1, and specifically that provision's reference to the ICC rules, as somehow constituting "clear and unmistakable" evidence of the parties' intent to delegate to an arbitrator questions of arbitrability of IP disputes like the one here. That argument fails to account for the plain terms of Section 7.2.1, which applies specifically to IP disputes and broadly prohibits them from being submitted to arbitration.

The Second Circuit has repeatedly held that an arbitration provision's incorporation of arbitration rules does not clearly and unmistakably delegate the question of arbitrability to an arbitrator where, as here, the claim at issue is excluded from the arbitration clause that incorporates those rules. *See DDK Hotels*, 6 F.4th at 321;

16

*NASDAQ OMX*, 770 F.3d at 1032. Thus, when presented with an arbitration provision that incorporates arbitration rules, the court must ask: Are the claims at issue arguably exempted from the arbitration provision? *See DDK Hotels*, 6 F.4th at 322; *NASDAQ OMX*, 770 F.3d at 1032, 1035-36. If so, the provision's reference to arbitration rules does not clearly and unmistakably establish the parties' intent that the arbitrability of such claims should be submitted to an arbitrator, and the court is to decide the issue of arbitrability of those claims.

This Court's recent decision in *DDK Hotels* is instructive. *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308 (2d Cir. 2021). In that case, the parties' contract committed a defined set of "Disputed Matters" to arbitration by the American Arbitration Association (AAA) "in accordance with" AAA rules, which grant the arbitrator the power to resolve questions of arbitrability. *Id.* at 319-20. This Court recognized, however, that the provision's reference to the AAA rules would *not* commit to an arbitrator the question of arbitrability of a particular claim, *unless* that claim was deemed to "fall within the intended scope of arbitration." *Id.* at 321 (quoting *NASDAQ OMX*, 770 F.3d at 1032). That is, the contract's application of the arbitration rules "turns on the

conditional premise" that the dispute at issue actually falls within the scope of the contract's arbitration clause. *Id.* If the arbitration clause does not cover a particular dispute, the arbitration rules "do not govern and no delegation of authority to the arbitrator to resolve questions of arbitrability arises." *Id.* Accordingly, in *DDK Hotels*, because the dispute at issue did not fall within the scope of the arbitration clause, the clause's reference to the arbitration rules did not apply to that dispute, and the question of arbitrability was not earmarked for an arbitrator. *See id.* The contract terms and IP claims at issue compel the same outcome here.

Amyris attempts to distinguish *DDK Hotels* by arguing that the arbitration clause in that case was narrow, whereas Section 7.1.1 is, according to Amyris, broad. *See* Br. of Appellant Amyris, Inc., 30-31 (Doc. 58) ("Amyris Br."). But to make the argument, Amyris ignores the other half of the parties' dispute resolution provision: Section 7.1.1 is not sufficiently broad to support Amyris's position because it is significantly narrowed by Section 7.2.1, which expressly excludes IP disputes from arbitration. A319. Indeed, this Court has addressed contracts that involve a "broad arbitration clause that the parties

18

subjected to a carve-out provision," and the analysis is the same: If the dispute at issue "does not fall within the intended scope of arbitration," then a reference to arbitration rules does not delegate the question of arbitrability to an arbitrator. *NASDAQ OMX*, 770 F.3d at 1032. Contrary to Amyris's argument, an arbitration clause subject to a carve-out provision is "not akin" to a broad arbitration clause that indiscriminately delegates to an arbitrator the question of arbitrability for all disputes between the parties. *Id.*; *see also DDK Hotels*, 6 F.4th at 321-23 (extensively citing and quoting *NASDAQ OMX* with approval).

In the RCL Agreement, Section 7.1.1 is qualified and narrowed by Section 7.2.1's express prohibition *against* submitting IP disputes to arbitration. While Section 7.1.1 references the ICC rules, those rules do not apply—let alone clearly and unmistakably so—to disputes that are plainly excluded from arbitration under Section 7.2.1. Amyris's argument for application of the ICC rules referenced in Section 7.1.1 fails in the presence of "a carve-out provision that, at least arguably, covers the instant dispute." *NASDAQ OMX*, 770 F.3d at 1035-36. Section 7.2.1 far exceeds that standard, as its carve-out terms clearly and squarely cover the instant IP dispute. Accordingly, the ICC rules do

19

not apply to compel arbitration of the arbitrability of Lavvan's IP claims.

Amyris insists that "once the parties agree an arbitrator will decide, that's the end of the matter." Amyris Br. at 34. Amyris misses the point: the plain terms of the RCL Agreement show that the parties did *not* agree that an arbitrator will decide arbitrability of IP disputes. Unlike Amyris's approach, the Second Circuit's precedent properly calls for analyzing what claims the parties agreed to arbitrate or submit to arbitration to determine arbitrability.[1] Arbitration "is simply a matter of contract between the parties; it is a way to resolve those disputes— but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chi.*, 514 U.S. at 943. The court therefore must look to the entire agreement to discern the parties' intent. Here, that evidence thoroughly rebuts Amyris's position: the parties expressly excluded IP claims such as Lavvan's from the arbitration provision that

---

[1] Amyris's reliance on *Alliance Bernstein* is unavailing. In that case, unlike here, there was no question that the arbitration provision incorporating arbitration rules applied to the dispute at issue. *Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 126-27 (2d Cir. 2006).

references ICC rules, and the parties expressly *prohibited* submitting IP disputes to arbitration.

### C. Because the parties did not delegate to an arbitrator the question of arbitrability of IP disputes, the Supreme Court's decision in *Henry Schein* does not apply

Unable to point to clear and unmistakable evidence of the parties' intent to delegate to an arbitrator the question of arbitrability of the parties' IP disputes, Amyris instead misuses the Supreme Court's decision in *Henry Schein* to suggest that the courts must refer the question of arbitrability to an arbitrator even in the absence of clear and unmistakable evidence of the parties' intent to do so. *See* Amyris Br. at 32-39. That is not the law, and the Second Circuit has squarely rejected Amyris's misinterpretation. *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 195 (2d Cir. 2019).

In *Henry Schein*, the Supreme Court merely held that *when arbitrability has been delegated to an arbitrator*, a court may not decide the arbitrability question even if that claim to arbitrability is "wholly groundless" on its face. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527-28 (2019). In other words, the courts must follow the

parties' expressed intent to delegate the question arbitrability even if the answer to that delegated question may be obvious.

In so holding, the Supreme Court reaffirmed that on the threshold question of whether the parties did in fact delegate arbitrability to an arbitrator, such delegation must be established by "clear and unmistakable" evidence. *Id*. at 530 (citing *First Options of Chi.,* 514 U.S. at 944). The Supreme Court did *not* address whether the parties had actually delegated the question of arbitrability to an arbitrator. *Id*. at 531. And on remand, the Fifth Circuit held that, as here, the parties had *not* delegated arbitrability to an arbitrator. *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 282 (5th Cir. 2019) (affirming denial of arbitration).

Amyris attempts to stretch *Henry Schein* far beyond its holding, suggesting that *Henry Schein* somehow requires a court to close its eyes to the scope of the arbitration provision when evaluating whether the parties clearly and unmistakably delegated the question of arbitrability to an arbitrator. This Court has soundly rejected that argument, explaining that it "misunderstands the point of *Henry Schein*": "The point of the *Henry Schein* opinion was that, where the parties *have*

22

*agreed* to submit arbitrability to arbitration, courts may not nullify that agreement on the basis that the claim of arbitrability is groundless." *Bucsek*, 919 F.3d at 195; *see also DDK Hotels*, 6 F.4th at 323 n.6 (Second Circuit "already considered, and rejected," Amyris's argument "in *Bucsek*").[2]

Here, as in *Bucsek*, the district court in this matter did *not* apply the "wholly groundless exception" the Supreme Court rejected in *Henry Schein. Cf. Bucsek*, 919 F.3d at 195. Instead, the district court properly analyzed the RCL Agreement for the required clear and unmistakable evidence of the parties' intent to delegate to an arbitrator the question of arbitrability of IP claims, and correctly found no such evidence. A192-

---

[2] Amyris relies on a series of out-of-circuit cases to try to support its misinterpretation of *Henry Schein*. *See* Amyris Br. at 34-38. Those decisions are neither controlling nor persuasive. The core question of whether the parties' agreement contains "clear and unmistakable evidence" of intent to delegate the question of arbitrability to an arbitrator depends on the terms of the contract at issue. None of Amyris's inapposite out-of-circuit cases involve an arbitration provision that expressly prohibits submitting specific types of disputes to arbitration, as the RCL Agreement does. *See, e.g.*, *Bossé v. N.Y. Life Ins. Co.*, 992 F.3d 20, 24 (1st Cir. 2021) (broad arbitration provision expressly covering "any dispute, claim or controversy" arising between the parties "as well as any dispute as to whether such Claim is arbitrable").

93. As a result, the question of arbitrability cannot be delegated to an arbitrator.

*       *       *

The relevant question for the Court is whether there is "clear and unmistakable" evidence of the parties' intent to delegate the question of arbitrability of IP disputes to an arbitrator. There is not. The evidence is clear and unmistakable in the *opposite* direction. The parties unambiguously agreed in Section 7.2.1 that IP claims "will not be submitted to arbitration" for any purpose, without exception. A319. As the district court correctly concluded, Amyris fails to carry its burden of showing that the RCL Agreement clearly and unmistakably delegates to an arbitrator the question of arbitrability of Lavvan's IP claims.

## II.   Under Section 7.2.1 of the RCL Agreement, Lavvan's IP claims must be heard in court, not arbitration

Section 7.2.1 is unambiguous: Lavvan's IP claims are not arbitrable because they concern the scope, ownership, validity, enforceability, revocation or infringement of any Intellectual Property. A319. Because Lavvan's IP claims on their face fall squarely within Section 7.2.1, Amyris instead argues that Lavvan's claims should be

24

treated as are *non-IP* claims disguised as IP claims. The district court analyzed and correctly rejected Amyris's theory.

## A. Section 7.2.1 unambiguously provides that Lavvan's IP claims "will not be submitted to arbitration"

To determine arbitrability, courts examine "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *NASDAQ OMX*, 770 F.3d at 1032-33. The first question is not contested. To determine the second question, the court must look to the terms of the parties' agreement. *Id.* at 1033.

The "first principle" underscoring federal arbitration jurisprudence is that arbitration "is strictly 'a matter of consent.'" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010). While there is sometimes a presumption in favor of arbitration, "it is the language of the contract that defines the scope of disputes subject to arbitration," and thus parties may be compelled to arbitrate only those disputes that they have agreed to submit to arbitration. *NASDAQ OMX*, 770 F.3d at 1033; *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) ("courts and arbitrators must not lose

25

sight of the purpose of the exercise: to give effect to the intent of the parties").

Importantly, where, as here, an arbitration clause "is best construed to express the parties' intent *not* to arbitrate certain disputes, that intent controls and cannot be overridden by the presumption of arbitrability." *Lloyd v. J.P. Morgan Chase & Co.*, 791 F.3d 265, 270 (2d Cir. 2015).

Courts will also give effect to an agreement that commits some disputes to arbitration and not others, even when that may result in less-than-efficient "piecemeal" proceedings. *See In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d 113, 142 (2d Cir. 2011) (affirming district court's order to enjoin arbitration of certain claims but not others because the FAA "requires that we rigorously enforce agreements to arbitrate, *even if the result is 'piecemeal' litigation*").

In the RCL Agreement, Section 7.1.1 commits some disputes to arbitration, and Section 7.2.1 expressly and unambiguously *prohibits* arbitration of IP disputes. A319. Further, Section 1.68 defines the term "Intellectual Property" to include, in relevant part, "all worldwide intellectual property and industrial property rights and rights in

26

proprietary and/or confidential information, whether registered or unregistered," including among other things all "Patent Rights," "trade secrets and all other confidential information, ideas, Know-How, inventions, proprietary processes, formulae, models, and other methodologies," and "licenses to any of the foregoing." A295.

### B. Lavvan asserts IP claims that fall squarely within Section 7.2.1's prohibition against arbitration

Lavvan's IP claims fall squarely within Section 7.2.1's prohibition against arbitration of IP disputes. Indeed, the district court examined the substance of Lavvan's claims and correctly concluded that Lavvan had alleged IP claims. A193.

For its patent infringement claim, Lavvan has listed specific patents it alleges were infringed (A279-83), alleged that it entered the RCL Agreement to obtain an exclusive license to those patents (A218-19, A224-29), and described how Amyris infringed and continues to infringe those patents by developing its own cannabinoids and producing cannabinoids via fermentation, both of which necessitate use of the patents licensed exclusively to Lavvan (A284-85).

For its trade secret claim, Lavvan alleged that it possessed trade secrets including "specialized knowledge of market opportunities and

27

regulatory requirements for various cannabinoids" derived from its market research and "analyses detailing the strengths and weaknesses of various manufacturers" (A239-41, A251-52, A276-77), that it hired a "seasoned team of world-class professionals with extensive expertise in the cannabis space" who were "highly sought-after" in the industry (A233), and that these trade secrets would "enable faster time to market" and thus greater market share (A217). Lavvan further alleged that it took steps to protect such information, including amending the RCL Agreement to impose penalties for unauthorized public statements, requiring encryption and non-disclosure agreements, and segregating sensitive files from general employees' access (A243, A269), and that Amyris misused the trade secrets it licensed exclusively to Lavvan (A272-74).

As the district court held, Lavvan's patent infringement and trade secrets claims fall within Section 7.2.1's scope, and Section 7.2.1 leaves no room for doubt: the claims "will not be submitted to arbitration." A319.

Rather than arguing that claims for patent infringement and trade secret misappropriation are not covered by Section 7.2.1, Amyris

urges that the "substance" of Lavvan's claims somehow falls outside the scope of Section 7.2.1. *See* Amyris Br. at 41. Amyris is wrong, and its cited authority does not support its position.

Amyris relies on this Court's guidance that analysis of arbitrability "is not controlled by the characterization of [the claims] in the pleading," but instead should "'focus on the allegations in the complaint rather than the legal causes of action asserted.'" *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20-21 (2d Cir. 1995). The district court recognized this principle and correctly concluded that, applying *Collins* to the facts of this case, Lavvan had set forth substantive IP claims that are excluded from arbitration under the RCL Agreement. A193 (citing *Collins*).

Indeed, the ruling in *Collins* supports the district court's sound conclusion. In that case, this Court was asked to determine which of seven claims in a federal complaint were subject to arbitration. *Collins*, 58 F.3d at 17, 20. The litigants had entered three contracts—two in 1977 and one in 1988. *Id.* at 18-19. The 1977 contracts had arbitration provisions covering "any claim or controversy arising out of or relating to" those agreements. *Id.* at 18. The 1988 contract had no arbitration

29

provision and did not refer to the 1977 contracts. *Id.* The defendant nevertheless sought to compel arbitration of multiple claims arising from the 1988 contract. *Id.* at 19. The Second Circuit rejected the defendant's effort to compel arbitration of claims that sought relief under the 1988 contract. *See id.* at 23 (affirming stay of arbitration of claims to the extent they did not arise from the 1977 contracts).

This Court's reasoning in *Collins* undermines Amyris's argument here. To start, this Court *rejected* as "frivolous" the core argument Amyris presses here: that "because one of the claims is clearly arbitrable, and because all of the claims are related to a single set of facts," all claims should be arbitrated. *Id.* at 20. In rejecting that approach, this Court emphasized that arbitration agreements must be "rigorously" enforced, "even if the result is 'piecemeal litigation.'" *Id.* ("if some claims are non-arbitrable, while others are arbitrable, then we will sever those claims subject to arbitration from those adjudicable only in court").

Under these guiding principles, this Court barred arbitration of claims seeking relief under the 1988 contract that lacked an arbitration provision, while observing that facts relating to the 1988 contract could

30

be offered in the arbitration—to the extent they relate to wrongs arising out of the arbitrable 1977 contracts. *See id.* at 23 (explaining that the court's approach would allow the parties to fully arbitrate the arbitrable claims by not artificially limiting the evidence that could be introduced while also not permitting the arbitrator to go beyond the scope of the 1977 contracts in rendering a decision).

The operative language in the RCL Agreement is, of course, different from the language at issue in *Collins*, and the division between arbitrable and non-arbitrable claims is thus drawn along different lines. While the arbitration provisions in *Collins* covered only "any claim or controversy arising out of or relating to" certain agreements (the 1977 agreements), the RCL Agreement's arbitration provision covers only non-IP disputes and expressly prohibits arbitration of IP disputes. A319; *cf. Lloyd*, 791 F.3d at 270 ("if an arbitration clause is best construed to express the parties' intent *not* to arbitrate certain disputes, that intent controls and cannot be overridden by the presumption of arbitrability").

Nonetheless, far from undermining Lavvan's position, *Collins* supports Lavvan's position for at least two reasons. First, *Collins* makes

31

clear that the overlapping allegations in an arbitration and lawsuit do

not compel that all claims must be arbitrated—indeed, the notion that

overlapping facts or allegations would somehow compel arbitration of

all overlapping claims is "frivolous." *Collins*, 58 F.3d at 20. Second,

*Collins* reinforces that a court may not order arbitration of claims that

seek substantive relief that falls outside the scope of the governing

arbitration agreement. *See id.* at 23.[3]

---

[3] Amyris's cited out-of-circuit cases likewise do not support its position. Some involve broad, readily distinguishable arbitration provisions with no limitation akin to Section 7.2.1. *See, e.g.*, *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 625 (4th Cir. 2006) (arbitration clause covering "any dispute, controversy or claim arising out of or in connection with, or relating to, any subscription of the Note, or any breach or alleged breach hereof, including allegations of violations of federal or state securities law"); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (arbitration clause covering "all controversies and claims 'arising out of or relating to' the agreements between the parties"); *Acevedo Maldonado v. PPG Indus., Inc.*, 514 F.2d 614, 616 (1st Cir. 1975) (arbitration clause covering "any controversy or claim arising out of or relating to this Agreement or the breach thereof"). Others *rejected* motions to compel arbitration, in whole or in part. *See CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 175 (3d Cir. 2014) (reversing order granting motion to compel arbitration); *Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1200 (10th Cir. 2009) (rejecting argument that arbitrable claim and non-arbitrable claim "cannot be separated"); *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n,* 384 F.3d 157, 159 (4th Cir. 2004) (denying motion to compel arbitration). And one does not even contain the language of the arbitration clause at

Here, Amyris does not and cannot dispute that Lavvan's IP claims seek relief for patent infringement or trade secret misappropriation. Instead, Amyris characterizes Lavvan's claims arising from its IP rights as somehow "second-order" to possession of the rights. *See* Amyris Br. at 55. That irrelevant characterization does not change the fact that Lavvan's IP claims—which have survived Amyris's motion to dismiss those claims on the merits—are expressly excluded from arbitration under the terms of Section 7.2.1. The parties' clear intent controls. *See, e.g.*, *Lloyd*, 791 F.3d at 270 (arbitration clause prohibiting arbitration of certain claims "controls and cannot be overridden by the presumption of arbitrability"); *Stolt-Nielsen S.A.*, 559 U.S. at 684.[4]

---

issue. *Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1448 n.21 (11th Cir. 1998).

[4] Amyris's reliance on *National Gypsum* is likewise misplaced. *See* Amyris Br. at 43-44. In that case, this Court held that an arbitration respondent seeking to enjoin the arbitration based on a defense of preclusion under an earlier court decision was required to assert that preclusion defense in the arbitration, because the arbitration clause covered "any disputed issue within the scope" of the governing agreement. *U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*, 101 F.3d 813, 817 (2d Cir. 1996). Unlike the arbitration provision in *National Gypsum*, Section 7.2.1 of the RCL Agreement expressly prohibits arbitration of Lavvan's IP claims.

**C.    Section 7.2.1 resoundingly defeats any presumption of arbitrability of Lavvan's IP claims**

Amyris's fallback argument that ambiguity in arbitration clauses should be resolved in favor of arbitration is unavailing, not only because the RCL Agreement's prohibition on arbitration of IP disputes is clear and unambiguous, but also because an arbitration clause such as Section 7.2.1 that "is best construed to express the parties' intent *not* to arbitrate certain disputes" decidedly "cannot be overridden by the presumption of arbitrability." *Lloyd*, 791 F.3d at 270. Because Lavvan's IP claims are unambiguously within the scope of Section 7.2.1, they may not be submitted to arbitration.

## CONCLUSION

The Court should affirm the district court's order denying Amyris's motion to compel arbitration.

Dated: December 15, 2021

Respectfully submitted,

CYRULNIK FATTARUSO LLP

  /s/ Jason Cyrulnik     
Jason Cyrulnik
Paul Fattaruso
55 Broadway, Third Floor
New York, NY 10006
(646) 844-2466
jcyrulnik@cf-llp.com
pfattaruso@cf-llp.com

*Counsel for Plaintiff-Appellee,*
*Lavvan, Inc.*

# CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7) and Local Rule 32.1(a)(4)(A) because, excluding the portions of the document exempted by Federal Rule 32(f), it contains 6,613 words.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: December 15, 2021

    /s/ Jason Cyrulnik
Jason Cyrulnik

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury pursuant to 28 U.S.C.

§ 1746, that I caused true and correct copies of this brief to be sent on

the next business day to the following counsel for defendant-appellant

via U.S. First-Class Mail with postage prepaid:

Michael D. Celio
Gibson, Dunn & Crutcher LLP
1881 Page Mill Road
Palo Alto, CA 94304

Daniel R. Adler
Matt Aidan Getz
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071

Dated: December 15, 2021

/s/ Jason Cyrulnik
Jason Cyrulnik

37